```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
FUNNEKOTTER, et al.,                :
                                    :
                        Petitioners,:
                                    :   09 Civ. 08168 (CM)(THK)
            -against-               :
                                    :   MEMORANDUM OPINION AND
                                    :          ORDER
                                    :
REPUBLIC OF ZIMBABWE,               :
                                    :
                        Respondent. :
------------------------------------X
```

**THEODORE H. KATZ, United States Magistrate Judge.**

Petitioners have motioned this Court to impose sanctions on Respondent, the Republic of Zimbabwe, for failure to comply with the Court's Discovery Order of July 8, 2011. Petitioners ask the Court to preclude Respondent from arguing that various Zimbabwean corporations, ("Commercial Entities"),[1] are not alter egos of Respondent; to find that the Commercial Entities are, in fact, the alter egos of Respondent; to impose a monetary penalty on Respondent; and to award them attorneys' fees and costs. For the reasons set forth in this Order, the motion is granted in part and denied in part.

BACKGROUND

In April 2009, Petitioners obtained an arbitral award against

---

[1] The corporations are the Zimbabwe Mining Development Corporation, the Mineral Marketing Corporation of Zimbabwe, the Agricultural Development Bank of Zimbabwe, the Industrial Bank of Zimbabwe, and the Reserve Bank of Zimbabwe.

the Republic of Zimbabwe before the International Centre for Settlement of Investment Disputes ("ICSID"). Petitioners brought an action in the Southern District of New York to confirm and enforce that award. While Zimbabwe participated in the arbitration proceedings, it has not yet appeared in the present action.

On February 1, 2010, United States District Judge Colleen McMahon confirmed the arbitral award and entered judgment against the Republic of Zimbabwe in the amount of $25,120,171.33. After Zimbabwe refused to pay the Judgment, Petitioners sought to amend the Judgment to name as Defendants on the Judgment five Zimbabwean corporations, the Commercial Entities, claiming that the corporations were "instrumentalities" of the Government of Zimbabwe under 28 U.S.C. § 1603(a). Petitioners also sought writs of execution against the Commercial Entities.

Judge McMahon refused to modify the Judgment, stating that Petitioners had failed to identify property owned by the Commercial Entities, located in the United States, and used for a commercial activity. Judge McMahon did not rule on the question of whether the Commercial Entities are "instrumentalities" of the Zimbabwean Government within the meaning of the Foreign Sovereign Immunities Act ("FSIA"), since without identifying the property to be executed upon, no writ of execution could issue. (See Order, dated Feb. 2, 2010, at 4.)

2

Petitioners then sought to establish the existence of property belonging to the Zimbabwean Government that could be attached, as well as the relationship of the Commercial Entities to the Government of Zimbabwe, by attempting to serve the Government of Zimbabwe and the Commercial Entities with requests for document production and interrogatories. After the Republic of Zimbabwe failed to respond[2] to the discovery requests and to Petitioners' request for relief from this Court, on July 8, 2011, the Court issued an Order compelling Zimbabwe to respond to Petitioners' discovery requests. The Order explicitly warned the Government of Zimbabwe that failure to comply could result in the imposition of sanctions.

Petitioners then motioned for a similar order, compelling the Commercial Entities to respond to discovery requests. This Court denied Petitioners' motion without prejudice, on September 14, 2011, noting that, <u>inter alia</u>, the Commercial Entities had never been found to be alter egos of Zimbabwe and that discovery could not be compelled against a nonparty under Federal Rule of Civil Procedure 33, or against a foreign nonparty under the Rule 45 subpoena requirements expressly incorporated into Rule 34 of the

---

[2] Service on Zimbabwe was made properly. (<u>See</u> Order, dated July 8, 2011, at 2-3.)

3

Federal Rules of Civil Procedure. (See Order, dated Sept. 14, 2011.)

Despite this Court's Order compelling discovery against Respondent, Zimbabwe has ignored its discovery obligations and failed to answer any interrogatories or produce any documents. Petitioners now seek sanctions against Zimbabwe declaring the Commercial entities to be alter egos. They also seek to preclude Zimbabwe from denying the alter ego status of the Commercial Entities. In addition, they seek monetary sanctions against Zimbabwe for its failure to comply with this Court's Order, as well as attorneys' fees and costs for the efforts expended in attempting to obtain the discovery.

**DISCUSSION**

I. Monetary Sanctions

Petitioners seek monetary sanctions, under Federal Rule of Civil Procedure 37(b)(2), of $1,000.00 per day, until Zimbabwe complies with the Court's discovery Order. These sanctions would double every four weeks, until the sanctions reached $16,000.00 per day. Rule 37(b)(2), however, does not give a court the power to impose monetary sanctions directly. It instead permits courts to treat failure to comply with a court order as contempt. See Fed. R. Civ. P. 37(b)(2)(A)(vii). And, as Petitioners have stated, they

4

seek monetary sanctions "... to both punish Zimbabwe's complete failure to respond and persuade it to appear in this action and comply with its obligations to Petitioners and the Court." (Pet'rs' Mem. at 2.) These reasons, insofar as they are proper reasons for imposing monetary sanctions for failure to comply with a discovery order, fall within the definition of contempt sanctions. See S. New England Tel. Co. v. Global NAPs Inc., 624 F.3d 123, 146 (2d Cir. 2010)("[c]ivil contempt sanctions may serve 'dual purposes': securing 'future compliance with court orders' and 'compensa[ting] the party that has been wronged'")(quoting Paramedics Electromedicina Comercial, Limitada v. GE Med. Sys. Info. Techs., Inc., 369 F.3d 645, 657 (2d Cir. 2004)(alteration in original)); Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd., 885 F.2d 1, 5 (2d Cir. 1989)("[civil contempt sanctions are] remedial and compensatory, not punitive."); Int'l Bus. Mach. Corp. V. United States, 493 F.2d 112, 115 (2d Cir. 1973)("The hallmark of civil contempt is that the sanction imposed is only contingent and coercive."). Accord Musalli Factory for Gold & Jewelry Co. v. New York Financial LLC, No.06 Civ. 82(AKH), 2010 WL 2382415, at *3 (S.D.N.Y. June 14, 2010)(quoting Sweater Bee).[3]

---

[3] In addition, all of the cases cited by Petitioners in support of their request for sanctions involve contempt sanctions in particular. (See Pet'rs' Mem. at 2-3.)

While district courts have wide discretion in imposing sanctions for failure to comply with discovery orders, see Novak v. Wolposs & Abramson, LLP, 536 F.3d 175, 177 (2d Cir. 2008), United States magistrate judges have limited civil contempt authority. See 28 U.S.C. § 636(e)(1), (4), (6).[4] Therefore, this Court cannot grant Petitioners' request for contempt sanctions, but, if appropriate, can merely certify the question to Judge McMahon. See 28 U.S.C. 636(e)(6)(B)(iii). Under the circumstances of this case, however, and for the following reasons, the Court declines to certify the question of contempt.

In imposing a sanction, "where the purpose is to make the defendant comply ... [the court] must . . . consider ... the probable effectiveness of any suggested sanction in bringing about the result desired." United States v. United Mine Workers of Am., 330 U.S. 258, 304, 67 S. Ct. 677, 701 (1947); accord Paramedics Electromedicina, 369 F.3d at 657-58 ("The district court is counseled to consider several factors in calculating a fine, including . . . the 'probable effectiveness of any suggested sanction in bringing about [compliance]' . . . .") (quoting Perfect

---

[4] To the extent that Petitioners seek sanctions to "punish" Respondent, the sanctions would constitute criminal contempt sanctions. Magistrate Judges have similarly limited powers to impose criminal contempt sanctions. See 28 U.S.C. § 636(e)(2) - (3), (6).

6

Fit Indus., Inc. v. Acme Quilting Co., Inc., 673 F.2d 53, 57 (2d Cir. 1982)). Here, there is no reason to believe that the contempt sanctions being sought would be effective in compelling Zimbabwe to comply with its discovery obligations, as none of Petitioners' or this Court's efforts thus far has been able to provoke even an appearance in this action from Zimbabwe. Indeed, Zimbabwe is now subject to a Judgment of the Court in an amount exceeding $25 million, and, to this Court's knowledge, Petitioners have made little headway in collecting that Judgment. Under these circumstances, certifying Zimbabwe's contempt in order to impose monetary sanctions against it would be an empty and inefficient exercise.

II. Rule 37 Discovery Sanctions

1. Establishing or Precluding Opposition to Certain Matters

Petitioners ask the Court to deem it established that the Commercial Entities are the alter egos of the Government of Zimbabwe. The Court declines to do so.

Rule 37(b)(2)(A)(I) provides that "if a party or a party's officer, director, or managing agent . . . fails to obey an order to provide or permit discovery," a court may direct that "designated facts be taken as established for purposes of the action, as the prevailing party claims." But no part of the Rule addresses a court's finding facts established when to do so would

affect the rights of an entity that is not a party to the litigation, and as to whom there has been no discovery order, no less an order that has been disobeyed.  Petitioners have not been permitted to compel discovery from the Commercial Entities, and they are not parties to this action.  Yet, a finding that the Commercial Entities are alter egos of the Government of Zimbabwe would be a finding against them, since it would subject their assets to attachment by Petitioners, as part of their efforts to enforce their Judgment against the Government of Zimbabwe.

Petitioners cite no authority for the proposition that such a sanction is appropriate under these circumstances, nor has this Court found any decisions supporting the idea that Respondent's sanctionable behavior can be used as the basis for findings of fact against a third party. Cf. Letelier v. Republic of Chile, 748 F.2d 790, 795 n.2 (2d Cir. 1984) ("Rule 37 sanctions ensure that a party will not benefit from non-compliance with discovery orders.  Yet, one party to litigation will not be subjected to those sanctions because of the failure of another to comply with discovery, absent a finding that the other party controlled the actions of the non-complying party.").  Indeed, even where a non-party is subject to a court-ordered deposition or subpoena, and fails to comply, the only remedies available are those for contempt, not adverse findings against the non-party. See Fed. R. Civ. P. 37(b)(1); Fed.

R. Civ. P. 45(e); <u>General Ins. Co of Am. v. Eastern Consol. Util.</u>, 126 F.3d 215, 220-21 (3d Cir. 1997). Accordingly, the Court will not impose a sanction concluding that the Commercial Entities are the alter egos of the Government of Zimbabwe.

Petitioners have also asked the Court to preclude the Government of Zimbabwe from denying the alter-ego status of the Commercial Entities. Under Rule 37(b)(2)(A)(ii), a court may issue an order "prohibiting the disobedient party from supporting or opposing designated claims . . ." Although, at first glance, this appears to be simply an alternative way of achieving the sanction against the Commercial Entities that this Court has refused to impose, it is, in fact, distinguishable.

When Petitioners sought to amend the Judgment entered against Zimbabwe to make the Commercial Entities parties to the Judgment, they sought a declaratory judgment from the District Court finding that the Commercial Entities are instrumentalities of the Government of Zimbabwe. The District Court declined to address that issue until Petitioners could identify property of the Commercial Entities that could be attached. Petitioners have not yet done so and, therefore, as things stand, the Commercial Entities have not been deemed alter egos or instrumentalities of the Government of Zimbabwe, and are not subject to the Judgment. Should there come a time when Petitioners are able to identify

9

attachable property of the Commercial Entities, and should Petitioners then proffer evidence to the Court tending to show that the Commercial Entities are the alter egos or instrumentalities of the Government of Zimbabwe, the Commercial Entities would, no doubt, be given the opportunity to respond. Should the Commercial Entities choose not to appear in this action, however, as a sanction for its failure to respond to Petitioners' discovery requests, the Government of Zimbabwe would be precluded from arguing that the Commercial Entities are not its alter egos.

Petitioners have repeatedly sought discovery in aid of the execution of their Judgment, pursuant to Rule 69(a)(2). They have properly served interrogatories and requests for document production on representatives of the Republic of Zimbabwe (see Order, dated July 8, 2011), seeking to establish facts regarding the extent of Respondent's ties to the Commercial Entities. Zimbabwe has simply ignored these requests, and has ignored the Orders of this Court. Therefore, precluding Respondent itself from denying the alter-ego status of the Commercial Entities is appropriate.

2. Attorneys' Fees and Costs

Petitioners also seek attorneys' fees and costs in the amount of $16,749.50 and $893.17, respectively, for the time spent attempting to secure from Zimbabwe the discovery authorized by this

Court's Orders. This sanction is specifically authorized by Rule 37. See Fed. R. Civ. P. 37(a)(5)(A) and (b)(2)(c). Nevertheless, it is a well-established rule in this Circuit "that absent unusual circumstances attorneys are required to submit contemporaneous records with the fee applications." Scott v. City of New York, 626 F.3d 130, 133 (2d Cir. 2010) (citing New York State Ass'n for Retarded Children v. Carey, Inc., 711 F.2d 1136 (2d Cir. 1983)); see also Whitney v. JetBlue Airways Corp., No. 07-CV-1397 (CBA), 2009 WL 4929274, at *4 (E.D.N.Y. Dec. 21, 2009)(noting in the context of a Rule 37 application: "It is clearly the attorney's burden to maintain contemporaneous records, see F. H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d at 1265, and fee applications are subject to denial where the fees have not been adequately documented. See, e.g., Riordan v. Nationwide Mut. Fire Ins. Co., 977 F.2d 47, 53 (2d Cir.1992).").

Petitioners have submitted no time records reflecting the work the for which they seek fees, their hourly rates, or evidence of the costs expended. Accordingly, their request for the award of fees and costs is denied.

## CONCLUSION

For the reasons set out in this Opinion, Petitioners' motion for sanctions is denied with respect to: (1) monetary contempt sanctions, (2) attorneys' fees and costs, and (3) their request

11

that the Commercial Entities be deemed alter egos of the Government of Zimbabwe. Their motion is granted with respect to precluding Respondent Zimbabwe from denying that the Commercial Entities are its alter egos.

SO ORDERED.

_____
THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE

Dated:   November 10, 2011
         New York, New York